# Exhibit A

| | |
|---|---|
| LATARSHA CHERRY<br>1548 Wadsworth Way<br>Baltimore, MD 21239<br><br>ALBERT BROWN<br>1548 Wadsworth Way<br>Baltimore, MD 21239<br><br>*For themselves and on behalf of all others similarly situated,*<br><br>*Plaintiffs,*<br><br>v.<br><br>ONE STOP AUTO PARTS, INC.<br>700 South River Landing Rd.<br>Edgewater, MD 21037<br>c/o Ferdinand F. Greeff<br>700 South River Landing Rd.<br>Edgewater, MD 21037<br><br>FERDINAND F. GREEFF<br>700 South River Landing Rd.<br>Edgewater, MD 21037<br><br>SCHRIER, TOLIN & WAGMAN, LLC<br>1390 Piccard Drive, Suite 315<br>Rockville, MD 20850<br>c/o Steven Schrier<br>1390 Piccard Drive, Suite 315<br>Rockville, MD 20850<br><br>*Defendants.* | IN THE<br><br>CIRCUIT COURT<br><br>FOR<br><br>BALTIMORE CITY, MARYLAND<br><br>Case No. 24-C-18-004167<br><br><br>Jury Trial Demanded |

### Class Action Complaint and Demand for Jury Trial

1. Plaintiffs, Albert Brown and Latarsha Cherry ("Plaintiffs"), individually and on behalf of a class of similarly situated persons, sue Defendants, One Stop Auto Parts, Inc. ("One Stop"), Ferdinand F. Greeff, and Schrier, Tolin & Wagman, LLC ("STW") for damages and injunctive relief for unlicensed lending and other actions in violation of consumer protection laws.

1

## Introduction

2. One Stop is a Maryland business that preys on vulnerable consumers through its owner, Ferdinand Greeff, and with the assistance of its counsel, STW.

3. One Stop ran an auto repair shop at 3419 Greenmount Ave. in the Baltimore neighborhood of Waverly. One Stop's customers largely came from economically-depressed areas in east and west Baltimore.

4. To finance repairs performed at its shop, One Stop extended loans to its customers at usurious rates with hidden, onerous financing terms. Maryland law requires a business extending these types of loans to consumers to have a valid license as part of the State's effort to curb abusive practices. The provisions of the Commercial Code under which One Stop elected to govern its lending practice require lenders such as One Stop to hold an Installment Loan license. However, One Stop has never had an Installment Loan license.

5. Through its counsel, Co-Defendant STW, One Stop has regularly taken aggressive collection efforts to collect on its unfair and deceptive loans. One Stop is one of the most active litigants in Maryland, and has obtained at least $3,587,538.94 in illegitimate judgments against its former customers in cases filed since the beginning of 2010.

## Parties

6. Plaintiff Albert Brown is a citizen of the State of Maryland.

7. Plaintiff Latarsha Cherry is a citizen of the State of Maryland.

8. Defendant One Stop is a Maryland corporation. One Stop operated an automotive repair shop and an unlicensed consumer financing business in Baltimore City, Maryland. Based on information and belief, One Stop has ceased its repair business and no longer completes vehicle

repairs. However, One Stop continues to aggressively pursue the collection of debts arising from its unlicensed lending.

9. Defendant Greeff is a citizen of Maryland and is, upon information and belief, the sole owner of One Stop. At all times, Defendant Greeff directly controlled the day-to-day operations of One Stop and made all final decisions about One Stop's business and collection activity, actively directing it to engage in the activities alleged herein.

10. Defendant STW is a Maryland law firm. Defendant STW has filed hundreds of cases in the District Court of Maryland on behalf of Defendant One Stop to collect on One Stop's unlicensed loans.

### Jurisdiction and Venue

11. This Court has jurisdiction over this case pursuant to § 1-501 of the Courts Article, as the amount in controversy exceeds the jurisdiction of the district court, and Plaintiff seeks a jury trial and to represent a class of similarly situated persons.

12. Venue is proper in this Court under § 6-201 of the Courts Article because Defendants One Stop, Greeff, and STW regularly carry on business in Baltimore City.

### Background Facts About Defendants' Illegal Business Model

13. One Stop's typical customers are the working poor of Baltimore City and its surrounding areas who need their vehicles to get to and from their jobs in order to support their families. When something goes wrong with their vehicles, this typical customer is particularly vulnerable, facing potential job loss if she cannot get to work, which can lead to eviction and homelessness.

14. Despite their desperate circumstances, One Stop's customers still reasonably expect fair treatment. Maryland regulates those providing loans to consumers, requiring that they be

3

licensed by the state, which fosters a marketplace where consumers can have confidence in seemingly legitimate lending businesses.

15. Until 2012, One Stop had a Sales Finance license which did not authorize the types of loans One Stop made to Maryland consumers. Even that license expired, without renewal, in 2012.

16. One Stop's Sales Finance license expired in 2012 and was not renewed.

17. That One Stop engaged in consumer lending without a license would be sufficient to establish liability even if it had scrupulously followed all of the other laws governing lending in Maryland. But unfortunately for its customers, One Stop, under Defendant Greeff's direct supervision, engaged in the type of misconduct that Maryland's consumer financing licensing requirements are designed to prevent.

18. One Stop's practice was to offer a seeming lifeline to its customers, but the terms of the deal were extraordinarily exploitative in that One Stop and Defendant Greeff would finance the needed auto repairs with hidden fees and penalties, and at usurious interest rates that are prohibited by Maryland law.

19. One Stop's practice was to start its stated interest rate between 22 and 24 percent per annum, the latter figure being the maximum annual interest rate available to a licensed consumer lender under Maryland law. However, not content with this crippling interest rate, One Stop added hidden financing charges and exorbitant late charges to the loan, pushing the actual interest rate far beyond that permitted by Maryland law.

20. The primary hidden finance charge employed by One Stop at Defendant Greeff's direction is a set "pre-penalty" that is worked into the amount financed, but is supposedly forgiven if all payments are made on time. But, the consumer pays interest on that inflated

4

amount (often hundreds of dollars) during the course of the loan. This means that the actual interest rate paid is higher than the amount disclosed on the paperwork. Moreover, any missed payment carries with it the massive penalty of locking in the excessive pre-penalty.

21. Similarly, One Stop, at Defendant Greeff's direction, charged late fees that exceed the amount permitted under Maryland law without being included in the interest rate calculation, pushing the actual interest rate being charged to its customers further over the legal limit.

22. Since August of 2012, One Stop has entered into thousands of similar illegal, unlicensed consumer financing agreements with Maryland consumers at usurious interest rates.

23. Through Defendant STW, One Stop has sued thousands of its former customers to collect on the illegal and usurious loans. Most of these customers were unrepresented and all had judgments entered against them as a result of One Stop's unlicensed lending practices.

24. Defendant STW had knowledge of the illegality of the lending. Indeed, Defendant STW affirmed under oath when it filed those lawsuits that its attorneys devoted at least 15 minutes in every case reviewing each complaint to ensure One Stop's "compliance with... Md. consumer protection laws."

## Facts as to the Named Plaintiffs

25. On or around December 30, 2015, Plaintiff Albert Brown brought his 2003 Buick to One Stop's automobile repair facility after his vehicle shut down at a red light. Mr. Brown learned about One Stop through an advertisement on the radio that indicated that One Stop could provide financing for car repairs. Mr. Brown met with Defendant Greeff at the One Stop dealership, who told him that he needed to replace the engine.

26. Because Mr. Brown could not afford to pay for the repairs in full, One Stop financed the cost of repairs. One Stop indicated that the cost to complete the repairs and place a lien on the

5

title of Plaintiff's vehicle would be $2,690.19. Consistent with its usual practice, One Stop's loan included the provision that it would forgive the last $420 due if all of Plaintiffs' payments were timely.

27. On January 8, 2016, One Stop entered into a Retail Installment Contract and Security Agreement ("RISC") with Mr. Brown and his partner, Plaintiff Latarsha Cherry, who guaranteed the loan. On the RISC, the cost for the repairs for the Vehicle was stated as to be $3,129.47, an unexplained increase over the amount quoted elsewhere in the paperwork. Plaintiffs provided a $900 down-payment and One Stop financed the remaining $2,229.47 balance.

28. The Truth in Lending Disclosures on the RISC indicate that the interest rate for the loan was 23% per year and that late charges would be $29 if any of the monthly payments were more than 15 days late. The RISC provided for twelve monthly $200.00 payments and one final payment of $132.53.

29. The RISC provides that the loan is governed by Maryland's Credit Grantor Closed End Credit provisions ("CLEC"), located at Md. Code Ann., Com. Law §§ 12-1001, *et seq*.

30. One Stop did not hold an active Maryland license for any type of lending, consumer or otherwise, at the time it entered into the RISC with Mr. Brown and Ms. Cherry.

31. After the engine was allegedly replaced on the Vehicle, Named Plaintiffs continued to have problems with the Vehicle. Named Plaintiffs repeatedly returned to the One Stop shop for additional repairs.

32. Mr. Brown and Ms. Cherry made multiple payments through May 2016. In June 2016, however, they voluntarily surrendered the Vehicle to One Stop after experiencing continued problems with the Vehicle's engine.

33. On or about April 7, 2017, One Stop, through its counsel Defendant STW, filed a breach of contract suit against Mr. Brown and Ms. Cherry in the District Court of Maryland for Baltimore City, bearing case number 010100091972017.

34. In its lawsuit, One Stop sought $2,023.30 in judgment principal and pre-judgment interest of $23.28, as well as $303.50 in attorney's fees. In its Certification of Attorney's Fees, Defendant STW included fifteen minutes of attorney time spent to "Review Client documents for compliance with FDCPA and MD consumer protection laws," which amounted to $62.50.

35. Without representation, Mr. Brown and Ms. Cherry did not defend the case and affidavit judgments in the total amount of $2,476.50 and $2,674.72 were respectively entered against them.

36. On October 10, 2017, One Stop, through its counsel STW, filed a Request for Garnishment on Wages to Broadway Services, Inc. to garnish Ms. Cherry's wages. On or about May 8, 2018, the judgments against Mr. Brown and Ms. Cherry were satisfied through the wage garnishment. One Stop and its counsel failed to send monthly creditor statements or a copy of the notice of satisfaction to Ms. Cherry or her employer, however, so the garnishment on Ms. Cherry's wages continued even after the judgment had been satisfied.

37. Accordingly, Mr. Brown and Ms. Cherry have paid at least $3,324.72 to One Stop on top of their $900 down-payment.

### Class Action Allegations

38. Named Plaintiffs propose the following Class definitions, subject to amendment as appropriate:

> Class: All Maryland consumers who, since August 3, 2012, entered into a Retail Installment Contract with One Stop.

7

> Subclass: All Class Members who had judgments entered against them and in favor of One Stop based on the Retail Installment Contract with One Stop that was entered into since August 3, 2012.
>
> Excluded from the Class and Subclass are One Stop, STW, and any entities in which One Stop or STW has a controlling interest, their agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

39. Named Plaintiffs do not know the exact number of members in the Class and Subclass, but Named Plaintiffs reasonably believe that the members of both the Class and the Subclass number in the thousands.

40. Named Plaintiffs and all members of the Class have been harmed by Defendants' acts, and seek injunctive relief and money damages.

41. The joinder of all Class members is impracticable within the meaning of Md. Rule 2-231(a)(1) due to the size and relatively modest value of each individual claim. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The Class and Subclass can be identified easily through records maintained by Defendants and through the courts.

42. There are well defined, virtually identical, questions of law and fact affecting all Class and Subclass Members, within the meaning of Md. Rule 2-231(a)(2). The questions of law and fact involving the Class claims predominate over questions which may affect individual Class Members. Those common questions of law and fact include, but are not limited to, the following:

   a. Whether One Stop lacked a consumer lending license when it extended consumer loans to Named Plaintiffs and the Class Members;

b. Whether One Stop included hidden financing charges in its standard form Retail Installment Contracts with Named Plaintiffs and the Class Members;

c. Whether One Stop charged Named Plaintiffs and the Class Members interest in excess of 24% for its consumer loans;

d. Whether any judgments entered against Subclass Members are void because One Stop engaged in unlicensed consumer lending;

e. Whether Defendant STW claimed, attempted, or threatened to enforce a right with knowledge that the right does not exist in their dealings with Named Plaintiffs and Subclass Members;

f. Whether Defendants One Stop and Greeff's actions constitute violations of the Maryland Consumer Protection Act;

g. Whether all Defendants' actions constitute violations of the Maryland Consumer Debt Collection Act;

h. Whether Defendants are liable to Named Plaintiffs and Class Members for damages or restitution, and the amount of such damages;

i. Whether a declaratory judgment is proper to declare that the judgments obtained by One Stop are void *ab initio*, and that any monies paid by Named Plaintiffs and Class Members pursuant to the Retail Installment Contracts must be repaid and returned by Defendants; and

j. Whether Defendants should be enjoined from engaging in such conduct in the future with respect to Named Plaintiffs and Class members.

43. The claims of Named Plaintiffs are typical of the claims of the respective members of the Class and Subclass within the meaning of Md. Rule 2-231(a)(3) and are based on and arise out of similar facts constituting the wrongful conduct of the Defendants.

44. Named Plaintiffs will fairly and adequately represent and protect the interests of the Class and Subclass, and have no interests which are antagonistic to any member of the Class.

45. Named Plaintiffs are adequate representatives of the Class and Subclass within the meaning of Md. Rule 2-231(a)(4), and are prepared to represent the Class and Subclass. Furthermore, Named Plaintiffs have secured counsel experienced in class actions, who foresee little difficulty in the management of this case as a class action.

46. Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole, within the meaning of Md. Rule 2-231(b)(2). Among other things, Defendants One Stop and Greeff engaged in unlicensed consumer lending with Named Plaintiffs and Class Members. Defendant STW has filed thousands of lawsuits against Maryland consumers in support of One Stop's unlicensed lending activity. Injunctive and declaratory relief is appropriate to stop this unlawful activity.

47. The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy within the meaning of Md. Rule 2-231(b)(3). The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Class wide relief is essential to compel Defendants to comply with Maryland law. The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because the damages

in an individual action would be relatively small. Indeed, as the number of illicit judgments against them indicates, Class members are likely unaware of their rights under Maryland law, and a Class action is both a necessary and highly efficient means of enforcing those rights.

### Causes of Action

### Count One
### Declaratory Judgment as To Subclass

48. Named Plaintiffs incorporate the foregoing paragraphs as if fully set forth.

49. This claim for declaratory relief is brought under the Maryland Declaratory Judgment Act, Md. Code Ann., Cts. & Jud. Pro. § 3-406, to settle and obtain relief from uncertainty and insecurity with respect to the rights, status and legal relations under Maryland law as between Named Plaintiffs and the Class on the one hand, and One Stop on the other.

50. All judgments obtained against the members of the Subclass arise out of unlicensed consumer lending by Defendant One Stop. The financing agreements used by One Stop purport to be governed by CLEC. A creditor making a loan under CLEC must also be licensed. Md. Code Ann., Comm. Law § 12-1015. Unless licensed, a person is not permitted to engage in the business of making installment loans or make more than five installment loans a year. Md. Code Ann., Fin. Inst. § 11-302(b).

51. Maryland law is clear; if a judgment is obtained pursuant to unlicensed consumer lending, that judgment is void *ab initio*.

52. Nevertheless, Defendants maintain that they may collect upon the void judgments.

53. Named Plaintiffs and members of the Subclass have been garnished by Defendants pursuant to the void judgments, or have received or will receive collection notices from Defendants and/or their debt collectors demanding payment of the void judgments.

11

54. These practices continue and will continue unless and until this Court declares and affirms that the judgments are void and the Defendants may not make efforts to collect on those judgments.

55. This presents an actual, justiciable controversy between the parties relating to the validity of the judgments.

## Count Two
## Usury – Defendants One Stop and Greeff

56. Named Plaintiffs incorporate the foregoing paragraphs as if fully set forth.

57. Because One Stop was not licensed to engage in consumer lending or lending under CLEC, One Stop is subject to Maryland's usury laws.

58. One Stop routinely charges excessive late fees that constitute interest. Maryland's usury laws require that a late charge for a missed payment is counted as interest if it exceeds 5% of the amount due. Md. Code. Ann., Com. Law § 12-105(c)(3). One Stop's RISC typically provides for late fees in excess of ten percent of the monthly periodic payment.

59. One Stop routinely includes in its loan agreements language that part of the debt will be forgiven if all payments are timely. This "forgiven" debt constitutes a pre-penalty that is waived unless the borrower is late on any payments. Therefore, the late charge for the first missed payment is significantly higher than indicated in the contract.

60. The maximum rate of interest that can be charged under Maryland's usury law is simple interest at an annual rate of 24%. Md. Code Ann., Com. Law § 12-103(c). As the RISCs One Stop uses with consumers already provide for an interest rate of 22 to 24%, the inflated late fees and hidden pre-penalty quickly push the interest rate above what is permitted by Maryland law once a consumer is late on a monthly payment.

61. Defendant One Stop charged and collected, extracted, accepted, or received, directly or indirectly, from Plaintiff and Class members, post-judgment interest at a rate of more than 24% per annum, at the personal direction and with knowledge of Defendant Greeff.

62. Accordingly, Defendants One Stop and Greeff are liable to each borrower for the greater of three times the unlawful interest collected or $500.00. Md. Code Ann., Com. Law § 12-114(a).

### Count Three
### CLEC
### (as to Defendants One Stop and Greeff only)

63. Named Plaintiffs incorporate the foregoing paragraphs as if fully set forth.

64. In the alternative, even if CLEC did apply, Defendants One Stop and Greeff are still liable to the Class under CLEC.

65. One Stop routinely includes in its loan agreements language that part of the debt will be forgiven if all payments are timely. This "forgiven" debt constitutes a pre-penalty that is waived unless the borrower is late on any payments. Therefore, a consumer is actually assessed two late charges the first time they are late on a payment and the late charge is significantly higher than what is indicated in the contract.

66. CLEC prohibits a creditor from imposing more than one late or delinquency charge for any single payment or portion of payment. Md. Code Ann., Com. Law § 12-1008(b). If a creditor assesses charges not permitted by CLEC, those additional charges are considered interest. *Id.* at 12-1008(d).

67. The maximum rate of interest that can be charged under CLEC is simple interest at an annual rate of 24%. Md. Code Ann., Com. Law § 12-1003(a). As the RISCs One Stop uses with consumers already provide for an interest rate of 22 to 24%, the hidden pre-penalty quickly

pushes the interest rate above what is permitted by Maryland law if a consumer is ever late on a single monthly payment.

68. Further, CLEC requires applicable disclosures under the federal Truth in Lending Act and its regulations. Md. Code Ann., Com. Law § 12-1014(b).

69. Under the Truth in Lending Act, the pre-penalty that is waived if all payments are timely made is considered a "hidden financing charge" and must be calculated into the amount of interest disclosed to the borrower. Accordingly, the hidden finance charge drives the interest rate beyond the permissible 24% limit.

70. A creditor making a loan under CLEC must also be licensed. Md. Code Ann., Comm. Law § 12-1015. Unless licensed, a person is not permitted to engage in the business of making installment loans or make more than five installment loans a year. Md. Code Ann., Fin. Inst. § 11-302(b).

71. Pursuant to Md. Code Ann., Com. Law § 12-1018(a)(2), One Stop and Defendant Greeff may collect "only the principal amount of the loan and may not collect any interest, costs, fees, or other charges with respect to the loan."

72. In addition, "a credit grantor who knowingly violates any provision of this subtitle shall forfeit to the borrower 3 times the amount of the interest, fees, and charges collected in excess of that authorized by this subtitle." § 12-1018(b).

73. As a consequence, Defendants One Stop and Greeff are liable to Named Plaintiffs and the class for three times the amount of interest, fees and charges that were collected in excess of the permissible amounts.

### Count Four
### Maryland Consumer Debt Collection Act

74. Named Plaintiffs incorporate the foregoing paragraphs as if fully set forth.

75. Defendants are debt "collectors" as defined by Md. Code Ann., Com. Law § 14-201(b).

76. The RISC agreements arise from consumer transactions, as defined by Md. Code Ann., Com. Law § 14-201(c).

77. At all times relevant to this Complaint, Defendants had both actual and constructive knowledge that One Stop was not licensed to engage in consumer lending when it extended loans to Class Members.

78. By filing lawsuits to enforce rights related to One Stop's unlicensed lending activity, Defendants claimed and enforced a right with knowledge that the right does not exist as defined by Md. Code. Ann., Com. Law § 14-202(8).

79. Additionally, by collecting or attempting to collect interest in excess of 24% per annum, Defendants claimed, attempted to and did enforce a right with knowledge that the right does not exist as defined by Md. Code. Ann., Com. Law § 14-202(8).

80. Accordingly, Defendants' acts constitute a violation of the Maryland Consumer Debt Collection Act, Md. Code. Com. Law § 14-202(8).

81. As a result of Defendants' failure to comply with the MCDCA, Named Plaintiffs and the Class suffered actual loss, emotional distress, mental anguish, and other damages.

### Count Five
### Maryland Consumer Protection Act
### (as to Defendants One Stop and Greeff only)

82. Plaintiff incorporates the foregoing paragraphs as if fully set forth.

83. Maryland's Consumer Protection Act ("Md. CPA"), Md. Code Ann., Com. Law § 13-101 *et seq.*, prohibits any "person" from engaging in any unfair or deceptive trade practices, *inter alia*, in the collection of consumer debts. CPA, § 13-303(3) and (4).

84. Defendants' actions to collect amounts allegedly due under the RISCs are actions in the collection of consumer debts.

85. As persons under the Md. CPA, § 13-101(h), Defendants One Stop and Greeff are prohibited from engaging in unfair or deceptive trade practices.

86. Defendants One Stop and Greeff engaged in unfair and deceptive trade practices through their actions described herein, including extending consumer loans when it was not licensed to do so, filing lawsuits to enforce rights related to its unlicensed lending activity, including hidden financing charges in its agreements and charging and collecting interest at a rate of more than 24% per annum.

87. In addition, the Md. CPA specifically prohibits Defendants One Stop and Greeff from making any false or misleading oral or written statement or other representation of any kind which has the capacity, tendency or effect of deceiving or misleading consumers. Md. Code Ann., Com. Law, § 13-301(1).

88. The CPA further prohibits Defendants One Stop and Greeff from failing to state a material fact if the failure deceives or tends to deceive. Md. Code Ann., Com. Law, § 13-301(3).

89. In violation of the Md. CPA, § 13-303(3) - (4) and § 13-301(1), Defendants One Stop and Greeff represented that they were entitled to utilize the courts to enforce their unlicensed lending activity by filing lawsuits in the District Court. They represented that a lawyer had examined the claim and they falsely stated that One Stop had complied with relevant Maryland consumer laws. In these uniform representations made to Named Plaintiffs, and the Class, and the Courts, Defendants engaged in both active misrepresentations and failures to state material facts which deceived and tended to deceive, and, again, violated the aforesaid sections of the Md. CPA. These written statements were false and misleading and deceived and tended to deceive.

90. In violation of the Md. CPA, § 13-303(3) - (4) and §13-301(3), Defendants failed to disclose to Named Plaintiffs and the Class and the Courts material facts. Specifically, Defendants failed to disclose that it was not entitled to judgments against Named Plaintiffs and Class Members.

91. This failure to disclose material facts led Named Plaintiffs and the Class to make payments which were not due and which they would not have made had Defendants disclosed the material facts. Defendants committed unfair and deceptive practices by collecting and attempting to collect amounts on alleged debts which, in fact, were not due and this conduct constitutes unfair and deceptive trade practices in violation of the Md. CPA, § 13-101 *et seq.*, including §§ 13-303(3) and (4), and §§ 13-301(1) and (3).

92. As a result of Defendants' unfair and deceptive trade practices in violation of the CPA, Named Plaintiff and the Class were caused injury and loss.

93. In addition, Defendants' violations of the Maryland Consumer Debt Collection Practices Act also constitute violations of the Maryland Consumer Protection Act pursuant to Md. Code Ann., Com. Law § 13-301(14)(iii).

## Count Six
### Unjust Enrichment

94. Named Plaintiffs incorporate the foregoing paragraphs as if fully set forth.

95. One Stop had no right to obtain judgments to enforce rights related to its unlicensed activity. These judgments are void.

96. When Defendants collected on the void judgments from Named Plaintiffs and Class Members, the Named Plaintiffs and Class Members conferred a benefit of these illegally collected amounts upon Defendants.

97. Defendants accepted the benefits conferred upon them by Named Plaintiffs and members of the Class when they accepted and retained amounts collected on One Stop's void judgments. Defendants were aware of the benefits conferred on them, as they demanded those benefits.

98. Defendants' collection, acceptance and retention of these illegal amounts, when Defendants were not entitled to the charges as a matter of law, was and continues to be unjust and inequitable. Defendants have not refunded the unlawfully collected amounts to Named Plaintiff and members of the Class and Subclass. Defendants should not be permitted to retain the benefits of those unlawful collections. Defendants' continued withholding of the unlawfully collected amounts is improper.

99. Named Plaintiffs and members of the Class conferred these unjust benefits upon Defendants after and as a result of Defendants' misconduct as set forth herein.

100. Accordingly, Defendants have been unjustly enriched by collecting on void judgments, and should disgorge all benefits obtained by Defendants as a result of this unlawful conduct.

WHEREFORE, Plaintiff respectfully requests the following relief:

A. For Plaintiff and all Class members, actual damages of all amounts paid to Defendants pursuant to the unlicensed consumer loans, a sum which exceeds $75,000.00;

B. For Plaintiff and all Subclass members, a declaration that any judgments entered against them pursuant to the unlicensed consumer loans are void *ab initio*;

C. Damages under CLEC against Defendants One Stop and Greeff of three times the amount of fees, interest and charges charged to them pursuant to the unlicensed consumer loans, a sum which exceeds $75,000.00;

18

D. Damages under Maryland's usury laws of the greater of three times the unlawful interest collected or $500.00;

E. Disgorgement of all benefits derived by Defendants from their unlawful conduct;

F. An award of attorney's fees and costs;

G. An order certifying this action as a class action pursuant to Md. Rule 2-231; and

H. Such other and further relief as the nature of this case may require.

Respectfully submitted,

_____
Thomas J. Minton
tminton@charmcitylegal.com
GOLDMAN & MINTON, P.C.
3600 Clipper Mill Rd., Suite 201
Baltimore, MD 21211
Tel.   (410) 783-7575
Fax.   (410) 783-1711

Alexa E. Bertinelli
abertinelli@civiljusticenetwork.org
CIVIL JUSTICE, INC.
520 W. Fayette Street, Suite 410
Baltimore, MD 21201
Tel.   (410) 706-5650
Fax.   (410) 706-3196

**Attorneys for Named Plaintiffs and the Class**

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable.

_____
Thomas J. Minton